Would the attorneys who are going to argue please approach the bench, identify yourselves for the record and let us know how much time you would like for your argument and save a little bit for rebuttal. And the microphone in front of you is for recording purposes only. It's not for amplification. If you want to be heard in the back of the courtroom and for this senior judge, speak up. Good morning, your honors. Michael Haberle for the Plaintiff Appellant Barefoot Architect. I'd request 25 minutes with 5 reserves for rebuttal. Okay. My name is Steve Squawford on behalf of the defendants at Belize and I request 15 minutes. Very good. Thank you. Mr. Haberle. May it please the Court. The attorney-client relationship is a relationship built on trust. This case presents the Court with the issue of whether a client should be penalized for having relied on counsel, whether a client is entitled to take its attorney's word at face value, or whether a client, in order to avoid losing a legal malpractice action, is required to disbelieve its own attorney's representations. There are two separate issues before the Court today, which is one, whether the first count of the complaint for legal malpractice resulting from the representation in the underlying copyright complaint was properly dismissed under the statute of limitations. The second issue is whether count two, which is a breach of fiduciary duty emanating from advice given after the Third Circuit rendered its opinion in the copyright case, whether that case is similarly barred by the statute of limitations. The counts one and two are separate counts, played with separate facts, as were required to do under the Pippin case. And yet the Court dismissed them both. Before getting into the statute analysis, I think it's worthwhile to look at what the Court had in front of it at the time it dismissed the complaint pursuant to 619. The trial court had an amended complaint which, when deciding a 619 motion, the trial court is required to take as true with all reasonable inferences drawn in favor of the plaintiff. And the trial court also had an affidavit from the plaintiff. There was no contrary affidavit from the defendants. The allegations in the affidavit, just like the allegations in the complaint, must have been taken as true. The complaint in the affidavit set forth the following sequence of events, which we contend provide bases on which the motion should have been denied. The district court granted summary judgment in the copyright litigation in October of 2009. After this decision comes down, the undisputed evidence is that the defendants controlled all information to plaintiff, to Barefoot. They told them that the district court had erred in its decision. Unsurprisingly then, there was an appeal filed. On January 14, 2011, the appellate court, the third circuit, rendered its opinion. Is it your position that in order to trigger the statute, the attorneys have to say, we made a mistake? That is not the case, Your Honor. Illinois case law provides that an attorney need not, that a client for the statute to begin to run, need not have a professional opinion that legal malpractice occurred. And in fact, if the attorneys were to say that, they would probably lose their own insurance, so they can't do that. So what is it, and you don't, I don't believe, allege any actual misrepresentation by the attorneys, other than this court was wrong. You don't allege any specific misrepresentation, just sort of general assurances, and we're going to get this fixed. Though, of course, by the time the appellate court affirms, the fix is not clear. So what is it you, what is it you think would trigger the statute, I guess? The statute, yes. And the statute in this case is triggered, it's when a client, generally it's when a client. You should know, I should have known. Yes. And I'm asking you, what would, in this scenario, trigger that? In this scenario, it's when the client sits down in 2013, because the bankruptcy occurred immediately following the appellate court decision. It almost took two weeks. It's in the Virgin Islands, it's now like walking up and down the cell street where you can find 100 attorneys who will file a corporate bankruptcy for you. Files that. The control of the company goes to the trustee. For the next two years, it's in bankruptcy. The bankruptcy is dismissed in January 2013. At this point, the company is still in existence. The principal is determining where to go because it's facing these claims which were not discharged in bankruptcy. And these are claims for fees for the underlying litigation. Correct. The other party's fees. Prevailing party fees in the copyright litigation. Okay. For which even at that time, in January 2013, defendants were still representing Barefoot in. On their fee litigation. Correct. So sitting down at that point, determining what happened and where to go, they discovered the fact that it was the attorney's actions that caused it. What did they discover? What are you saying they discovered? That's what I'm confused by. What are you saying they discovered? They read the Third Circuit opinion for the first time? What happened? What did they know then that they didn't know once the Third Circuit opinion comes down and says, well, if the district court made a mistake, we're going to make the same mistake and we're going to do what the district court did. What did they know differently? They sat down with counsel and analyzed what had happened before they had relied constantly on the defendant's opinions and statements. So they asked hard questions that they had never asked previously? What are you saying happened? I guess that's what I'm asking. Or what do you allege happened? Yes. Before that point, to a certain extent, it's irrelevant as to what happened from the company's perspective because the company is in bankruptcy. So at this point, all the assets are in the trustee's hands after the yes. Okay. But the trial court in this case said it was triggered either at the point of the Third Circuit decision or at the point they filed for bankruptcy. So what did they – so I'm not looking at those two years within bankruptcy. I'm saying what did they know after the bankruptcy that they didn't know before the bankruptcy? They found out that the court – they sat down with counsel and they discovered that, in fact, it was the failure to make these arguments rather than an error of the court that caused the damage here. So the act of malpractice was the failure to join the necessary party? A few allegations of malpractice. What was the last act of malpractice? The last act of malpractice is in May of 2009, as to count one, when they failed to argue that there was a transfer of the copyright implied by conduct and they similarly then subsequently failed to make that argument on appeal. Okay. And that was brought out in the Third Circuit opinion? Yes. And that was in February of 2011? January 14, 2011. And your contention is that the client should not have known at that point that a mistake had been made to put him on alert that malpractice may have been committed? Correct. Because of that – which under a two-year statute of limitations would mean that they knew, if they read the opinion, or should have known, had an idea that something was wrong, they had two years from that date to file a malpractice claim. I mean, that's generally how courts look at things. That's absolutely – Why wouldn't we look at it the same way here? The constant reassurances of counsel are what distinguishes this case from the cases in which an adverse judgment in and of itself would trigger the statute of limitations to begin to run. And this is akin to the Ballard case. Was it fraudulent? Well, we are – they're misrepresentations. They're saying the trial court erred after that – and after the Third Circuit decision. Was that a fraudulent misrepresentation? I believe it's a false statement of fact. Is it an inaccurate statement of opinion? At this point, after the Third Circuit makes its decision, I believe it's a false statement of fact. Don't you, with all due respect to us, of course, every time you lose, think the court erred? I mean, that's what lawyers do. That's what we think. Absolutely. But it's not a statement of fact, per se. It's our opinion – your opinion of our opinion, so to speak. Anyway, go ahead. I got it. I think that's where the footnote comes in with that, where it becomes clear after the Third Circuit opinion that it wasn't – that there were these specific errors – there were multiple errors that happened. It wasn't just that failure to join. It was a failure to argue implied by conduct transfer. At this point, that's where it's a false statement. You have the Third Circuit saying that these are all the problems that happened, and then the attorneys say, well, the court erred, so go file bankruptcy, which conveniently has the effect that it would put the company out of business, constituting the basis of the breach of fiduciary duty claim, where the attorneys, in that advice for filing for bankruptcy, the attorneys put their own interests before the client, had the client file for bankruptcy immediately, which then would put the company out of business, precluding the – any legal malpractice action from being filed against them if the company doesn't exist. Your clients allege in their complaint the defendant's quote informed the plaintiff of the content and legal effect of the appeals court's decision, but continued to assert that the appellate court erred and incorrectly decided the matter. What allegations specifically did the plaintiff make as to material facts misrepresented by defendants? The allegations of specific misrepresentations of material fact were that it was the court that erred as opposed to any error on their part. So that's the allegation of misrepresentation. But they correctly informed the plaintiff that the appellate court erred and went on to say that they thought it was incorrectly – and the appellate court incorrectly decided the matter. What's the material misrepresentation of the defendants? The material misrepresentation of the defendants is that the court erred, that the court – that it was the court's fault rather than their fault, which gets us to the constant reassurances as in the Butler case, where those were the exact same reassurances that told the statute in the Butler case. In the Butler case, the mayor wrong-told the client that the court had erred, and that was despite the client knowing of the adverse judgment, despite the fact, unlike this case, the client in the Mayor Brown case heard of the opinion of the court from third parties. So the client heard of the court's decision from the media as opposed to the attorney. So the client has even an independent source of information. The client then is told by mayor that it was the court that erred, and this court found that the statute of limitations did not start to run while these constant reassurances were applied. But that was the trial court level, was it not, in the Mayor Brown case? That was at the trial court level? That is correct. As opposed to at the appellate court level? Correct. There hadn't been an appeal yet, and Mayor Brown kept saying, we're going to win on appeal, we're going to win on appeal, don't worry. However, there were no allegations of any reassurances post-appeal, as there are in this case. The reassurances are if a client's told the court erred as opposed to, look, this is what actually happened here, here's what the court said we should have done that we did not do, what happens at that point is that the client's entitled to rely on this. It doesn't recognize the continuous representation rule. And so the converse of that is there's an inherent potential for abuse in that, where an attorney can string along a client by blaming some factor other than the attorney's representation to get past the statute of limitations, as happened in this case, and then take advantage of it if a legal malpractice action is filed. So there needs to be some check on that, and that's what the constant reassurance provides. In addition to that reason, there is also, I think, a very strong policy reason for the precluding a statute from beginning to run while there are constant reassurances, as if this is not the case, if Illinois does not recognize constant reassurances of counsel as precluding a statute from beginning to run, the client is required to avoid losing a malpractice action, to give a second opinion on everything. When the attorney tells them this is what happened in the case, the client is not entitled to rely on that and must go to someone else. It's a lot of expense, and it undermines the trust that is inherent and is the foundation of the attorney-client relationship. Also contend that the trial court erred in determining that there was no issue of fact. There are, in this case, multiple dates on which a finder of fact could determine that Barefoot knew or should have known. One of those dates, pursuant to the unconvested facts in the amended complaint and in our affidavit, is in January 2013. Those are the unrebutted facts. Now, where multiple dates exist on which the statute of limitations could begin to run, a dismissal is improper. And this is exactly the case in Jackson-Jordan and in Butler, where there were multiple dates when the court found that the statute of limitations could have began to run. Some of those made it, at least one, made the complaint timely. Therefore, dismissal in Butler and the grant of summary judgment in Jackson-Jordan were reversed. I'd like to talk a little bit about Count 2, which I believe is a little bit easier than Count 1 when it comes to the statute of limitations. Now, the incorrect advice given in the breach occurred in January of 2011. The advice was to file bankruptcy. That advice turned out to have harmed the client and been negligent in a situation where you have this one, essentially one creditor pursuing this aggressive claim. It was, of course, a trial. An expert would need to be provided, demonstrating that that constituted a deviation from the standard of care. But the earliest that Barefoot could have found that the advice to file bankruptcy was wrong was upon the dismissal of the bankruptcy in January 2013. Various courts have found, including in the Lucy case, that the statute of limitations will rarely start to run prior to an adverse judgment. And the adverse judgment in this case, as to Count 2, was when the bankruptcy was dismissed. Well, what are the damages that you allege were caused? I understand your allegation that they were motivated by self-protection. The defendants were motivated to advise bankruptcy because they thought it would protect them. But how was your client injured by filing bankruptcy? Just by the expense of the bankruptcy? Is that what you're saying? Partially. So, one, they had state law claims, which then were not pursued in state court. The court, after dismissing the copyright claim, found that the federal court found that it didn't have jurisdiction over the state law claim. So rather than continue filing the state law claims and pursuing these state law claims, the bankruptcy was filed. So as a result of the bankruptcy, those claims then were not pursued. Second, there are the client's own attorney's fees in bankruptcy, which was a fruitless endeavor. So they went to independent or different counsel to file bankruptcy, correct?  Although it was done at the advice of defendants, and defendants, in fact, in the background, were the ones telling them to do this. So the negligent advice was to file bankruptcy. Of course, defendants can, of course, defend the case under, if this wasn't our decision, or they could file a contribution claim or an indemnification claim against another counsel. But that in and of itself is insufficient and is not something that was actually before the court. There was no evidence that, in fact, they had not given this advice. The uncontroverted evidence was that the advice to file bankruptcy was given by the defendants. Plaintiffs relied upon it, and it was damaged as a result. And the final damage, just to make sure I answer your question, was the additional attorney's fees of the opposing party that were incurred as a result, as I believe there were some damages. The opposing party on the first case, on the underlying case. Correct, once that was in bankruptcy, those attorney's fees as well. So there are a few buckets of damages in the breach of fiduciary duty case. And you say that statute of limitations on that was not triggered until you came out of bankruptcy? Correct. Yes. Because when you came out of bankruptcy, you realized that nothing was accomplished by the bankruptcy? Yes. So the bankruptcy then was dismissed at that point. The company still was continuing, and the bankruptcy did not accomplish its purpose. And that's where I'd cite to the Lucy case and the other cases that cite Lucy for the proposition that rarely, unless it's glaringly obvious, will the statute begin to run before an adverse judgment. I contend that the earliest then that the count two could have ran is the adverse judgment, which was when their bankruptcy was dismissed in January 2013. I'd like to address a few of the defenses. Mainly just the fact that the additional counsel does not cause the statute to run. The fact that my client had additional counsel representing it for other matters does not cause the statute to run. All the cases cited by defendants for this proposition are where an attorney comes in to vacate or modify the prior judgment. And the Butler case, in fact, is demonstrative of the converse of that proposition, which is where attorneys are involved for other purposes. It does not cause the statute to run. I will then reserve the rest of my time for rebuttals. Thank you. May it please the Court. Again, my name is Steve Swafford. I'm half of the defendants at Belize. I think maybe the biggest flaw in the plaintiff's argument is he really fails to appreciate the objective standard of the discovery rule, of how it's a new or should have known standard, and how he seems to admit that he, let me back up, that he understands that he sustained harm at the time of the appellate decision, but he didn't understand that there was a wrongful cause. And yet, it seems hard to believe that he didn't have reason to believe it, given the fact that, as Judge Harris said, he alleged that he was, that the defendants informed him of the result and the contents of the decision in paragraph, I've lost the paragraph, but in any event, informed him of the results and the contents of the decision. So tell me why at that juncture, when the appellate court decision, it's undisputed, as plaintiff has alleged that he was, they were told of the content and legal effect of that decision, but tell me how did the plaintiff fail to reasonably know at that point that the defendants may have committed negligence? They certainly knew at that point, they lost their copyright infringements, but tell me how they should have reasonably known their lawyers had committed negligence? Of course, they didn't have to, well, first of all, they didn't have to know they had committed negligence. Under the standard of knowing versus not knowing, they only had to be, they only had to have reason to believe that their injury might have been wrongfully caused, because you really don't know, even lawyers don't know, if the injury was a result of negligence until after it's been legally determined. But at that point, they had a reason to believe that it was wrongfully caused, because the court of appeals said that their attorneys failed to join the necessary party, and that's pretty, you couldn't be much more explicit than that, that their attorneys did something wrong. At that time, did the plaintiff have a burden to inquire further as to whether or not a cause of action against the lawyers existed? And that's right, but under both Witterow v. Weimer and John Mansville, once you have some reason to believe that your attorney might, that your injury might have been wrongfully caused, the burden shifts to the client to explore whether it was, in fact, wrongfully caused. Yes, the burden was on the plaintiff to explore at that point in time whether the injury was wrongfully caused. This is an objective standard. I really don't think, you know, I, the only way, we gave him, the trial court gave the plaintiff the benefit of the doubt through, you know, equitable stopping through the trial court's decision, because my client said, we're going to appeal, and that's all fine. But once the appeal was over, and we said, and my client said, we believe the appellate court's wrong, that we didn't say that we had any recourse from it, or my clients didn't. Just like if I lose this appeal, I'm going to tell Mr. Sabo, that, you know, that's not a representation that he's going to get any relief. You know, 95% of what we do never reaches the Supreme Court. That's right. So we're hardly ever wrong. Yes, that's right. Absolutely. There may be a few people out there who think we're wrong. So I, it's really hard pressed to say that he's not, he's going to make it past the discovery rule. As to count two, it is part and parcel of really count one. Once he was put on notice, I distress you, but we submit began to round us the whole course of action. I don't understand that. If count two is on the advice to file bankruptcy, which didn't, wasn't even given until sometime in 2011, right, sometime between January and February 2011, and there was no clear evidence that that was bad advice initially, when do you say the statute began to round us? Well, of course, there's no, there's really no allegation to the complaint as to why it was bad advice at all. So I, and we want the attorneys for it. You didn't file the bankruptcy, but the allegation is that you advised him to file it. Which raises all sorts of questions as to how we could be the cause of the injury, since we didn't represent him in the bankruptcy, which perhaps we should agree that it is an issue. That wasn't the basis on which the trial court, in this case, decided the issue. No, it isn't, I agree. And did you argue that in your 2619? No, we didn't. Okay, so what you argued in your 2619 was statute of limitations. Yes, we did. Okay. Though we could theoretically reach a different result, theoretically. I would say, however, that he doesn't have any, it would be limited solely to the attorney's case he incurred. I don't see how it relates to this business about, didn't prevent him from bringing any state court actions. I don't know where he comes up with that. Well, they would belong to the trustee, wouldn't they? Any action is going to belong to the trustee at the point that he files bankruptcy. Yeah, this is speculative. It is very speculative as to why he didn't bring them anyway, though, or why the trustee didn't bring them then. In any event, explain to me your statute of limitations argument on the uncounted tip. When do you suggest that rank and why? Well, he incurred those damages as of, I think it was damages immediately, as of his third term. Well, you know, it would cost him money to bring the bankruptcy proceeding. He'd have to file bankruptcy counsel, but when did he know that that wasn't money well spent? When do you claim, when do you argue he should have known that that was not money well spent? Well, it wouldn't have been during our representation because we weren't representing him during the bankruptcy. So I can't answer that question. OK. We do have a proposal, which he didn't address. But I do have to say something about it because he has made some arguments in his reply brief, which I are not, which I have to challenge. He cites two cases, Troji and Snyder, I believe, in which he seems to argue that continuing representation and a failure to fix the malpractice that you've allegedly committed extend the period of repose or stop it, extend the period. Delay the time in which it starts. And she got it. I didn't bring that up with me, but I can do it by memory. I cite cases in my brief, mainly Lamed and Fricka, that says that is not the law, that the period of repose starts at the time of the alleged malpractice and your failure to cure it does not restart the period of repose, period. And the two cases he cites, again, Troji flat out says Fricka's still good law. And Snyder really stands for the proposition that the period that you can commit the last act in your chain of negligence is when the malpractice starts. And involved a dumb, quick-to-claim deed, and it didn't, the act, the repose didn't start until the final act of mailing and recording. I can't remember which. That's, you know, so that your first time you screwed up was not the repose time, but the last time you put in the mail, it was when the repose time was triggered. But had the attorney had a period of time before him to correct it, that would not have extended it. And his argument that the fact that my clients could have made a relation back argument or done something else pending the appeal in the Seventh Circuit to correct their alleged error, that would just not have extended the repose period. And I think our repose period argument is the correct argument, regardless of the limitations of the argument. That would be on count one, correct? That would be your backup argument, your alternative argument on count one, not count two. Is that or not? I guess you're right. Anything further? That's all, Your Honor. Thank you. Thank you, counsel. I ask the court to form the judgment. Briefly, Mr. Haberle. Briefly, Your Honor. Just a few comments based on the response, and then I'll get to the repose argument. My client satisfied his duty to explore whether malpractice was committed and whether the injury was wrongfully caused by talking to his attorney. His attorney told him and reassured him that it was, in fact, the court who had erred. To hold otherwise, to hold that's not sufficient investigation is to hold that a client is not entitled to rely on an attorney, which I think is deeply problematic. Now, on the potential of affirming the dismissal on count two on another basis such as no duty or causation, I don't think the record supports that. We have in the record that advice was given. There was unquestionably a duty at the time. There was a breach, which is getting the advice, which was incorrect advice, and causation we have that it directly caused damages. It doesn't matter whether an attorney files an appearance in a case or not. That's not the trigger. Plenty of Illinois cases hold that engagement letter doesn't matter. If there's an attorney-client relationship, the attorney has a duty to that client. What about the new attorneys as an intervening cause? I mean, they go to some new attorneys and get their advice and file bankruptcy based on what these attorneys, why is that not an intervening cause? If the facts showed that it was Szabo who said file bankruptcy, and then they, or let's, I think an easier analogy is what the defendants have claimed in the record for which there's no support, which is that the advice was just to seek independent counsel for bankruptcy. That's nowhere in the record, and that's contradicted by the facts this Court must take as true. The, it doesn't, there are no facts to show it was an intervening cause because that, because of the fact that they were involved in providing the advice to file bankruptcy. If the evidence showed. But there was a separate law firm filed on behalf of the client, right? Correct. So there was a separate law firm involved in filing the bankruptcy? There was. So the question Judge Mikta asked was why isn't that an intervening cause? If that law firm, if the first, if defendants got out at that point and had nothing more to do with the client, then it may be an intervening cause, but that's a question of fact for which the record doesn't have enough facts to support dismissal. That's going to be a, that would be a factual question, and the record doesn't show. So there's no affidavit saying after the bankruptcy we didn't talk to them, we didn't tell the bankruptcy attorney what to do, we didn't advise the bankruptcy attorney to go file the bankruptcy. We have, that could be a defense that they could raise, but it's not one that's supported by the record, that it's an intervening cause as a matter of law. And Mr. Renner has additional questions on that. I'd like to go to the statute of repose briefly. The allegation in that, I think the statute of repose argument ignores our allegations of negligence. We have an allegation not that there was a failure to correct. The cases cited for the statute of repose are often an attorney has a duty to correct where an attorney might, say, draft up a faulty deed or record it in the wrong county, like in that Triogui case. We're not alleging that. We're alleging when an attorney gets a summary judgment motion that raises a standing issue, you have a duty to address that standing issue in the response to the summary judgment. There are various ways that that could have been done in the reply filed in May 2009, making this timely. You could, in response to that, move to amend. You could argue transfer implied by conduct, especially in regard to transfer implied by conduct. That is something that should have been argued at summary judgment, and that would have been sufficient had it been argued at summary judgment. So it's not a failure to correct a prior error. It's an independent deviation from the standard of care for a failure to address an argument set forth in the summary judgment motion upon which the court ultimately dismissed the case. If nothing further, thank you for your time. I'd ask you to reverse the trial court. All right. We'd like to thank the parties for their extensive briefing on the subject matter. We'll take the matter under advisement. The court will stand in recess. Thank you.